IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RANDALL CHUN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. 25-cv-00105-DKW-KJM<br><br>**ORDER REMANDING DECISION OF COMMISSIONER OF SOCIAL SECURITY** |

　　Following the failure to correct or seemingly acknowledge what appears to be a surprisingly clear error in the determination of the Administrative Law Judge (ALJ) that Plaintiff Randall Chun could perform jobs existing in significant numbers in the national economy, Chun now appeals the denial of his claims for disability insurance and supplemental security benefits.  For the reasons set forth herein, the Court agrees with Chun that this matter must be returned for further administrative review.  Specifically, after concluding that Chun could do no work that requires reading or color vision, the ALJ adopted the testimony of a vocational expert that Chun could perform three jobs—two of which require color vision and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano was automatically substituted as the party-defendant in this action upon his appointment as the Commissioner of Social Security.

*all* of which require some level of reading ability, at least according to the Dictionary of Occupational Titles (DOT). Despite this, the ALJ did not clarify the apparent conflict with the DOT, the Appeals Council concluded that there was nothing erroneous to see here, and the government now attempts to explain away this discrepancy with its own understanding of one of the jobs. Because this is absurd, the Court REMANDS.

## BACKGROUND

### I.     Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520; 20 C.F.R § 416.920. First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. *Id*. §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c). Third, if the impairment matches or is equivalent to an established listing under the governing

regulations, the claimant is judged conclusively disabled.  *Id*. §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work.  *Id*. § 404.1520(e); § 416.920(e). The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of the RFC, prevents him from performing work he performed in the past.  *Id*. §§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f).  If the claimant is able to perform his previous work, he is not disabled.  *Id*. § 404.1520(f); § 416.920(f).

If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step.  *Id*. § 404.1520(a)(v), (g); §§ 416.920(a)(4)(v), (g).  At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy.  *Id*. § 404.1560(c); § 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the

Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1); § 416.920(g)(1).

## II.    The Administrative Process

On April 12, 2024, the ALJ issued a decision finding Chun not disabled for purposes of the SSA from the alleged onset date of September 23, 2012 through the date of the decision. Administrative Record (AR) at 17, 26. At Step One of the evaluation process, the ALJ determined that Chun had not engaged in substantial gainful activity since September 23, 2012. *Id*. at 19. At Step Two, the ALJ determined that Chun had the following severe impairments: "recurrent inguinal hernia status-post-repair, history of sigmoid diverticulosis status-post rectal prolapse repair, open right colectomy, Barrett's esophagus, alcohol abuse, and degenerative disc disease of the lumbar spine." *Id*. at 19-20. At Step Three, the ALJ determined that Chun did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 20.

Before reaching Step Four, the ALJ determined that Chun had the RFC to perform "medium" work, except he "can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." In addition, the ALJ determined that Chun was "precluded from hazards including ladders, ropes, and scaffolds,

dangerous moving machinery, unprotected heights…" and Chun could "do work that does not require reading as a job duty nor color vision." *Id*. at 20-23. At Step Four, the ALJ determined that Chun was unable to perform any past relevant work, which the vocational expert (VE) classified as a groundskeeper. *Id*. at 24. At Step Five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Chun could perform. *Id*. at 25. More specifically, the VE testified that, in light of Chun's RFC, age, education, and work experience, he would be able to perform the jobs of: (1) counter supply worker; (2) cleaner; and (3) floor waxer. *Id*. at 25. In light of these findings, the ALJ determined that Chun was not disabled under the SSA. *Id*. at 25-26.

On January 16, 2025, the Appeals Council found "no reason" to review the ALJ's decision, making that decision the final decision of the Commissioner. *Id*. at 1. On March 10, 2025, Chun appealed. Dkt. No. 1. With respect thereto, Chun has filed both opening and reply briefs, and the government has filed an opposition. Dkt. Nos. 9, 11-12. This Order now follows.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla

but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## **DISCUSSION**

Chun argues that, based upon the ALJ's RFC findings and the requirements set forth in the DOT, none of the jobs the ALJ found he could perform are, in fact,

jobs he can perform, at least not without further clarification.  For the reasons set forth below, the Court agrees.

As mentioned, the three relevant jobs here are counter supply worker, floor waxer, and cleaner.  The Court begins with an issue specific to the first two, before turning to the issue that affects them all.  With respect to counter supply worker and floor waxer, Chun argues that both require color vision.  Dkt. No. 9 at 13-15.  The government does not challenge this assertion.  Dkt. No. 11 at 2 (arguing that, "even assuming Plaintiff is right," the job of cleaner does not require color vision).  As a result, in light of the RFC that Chun could only do work that does <u>not</u> require color vision, it is undisputed that neither counter supply worker nor floor waxer are jobs that he can perform.

This leaves the job of cleaner and the ability to read.[2]  Chun argues that, according to the DOT, the job of cleaner requires the ability to read at a "Level 2", which includes a "[p]assive vocabulary of 5,000-6,000 words" and "[r]ead[ing] at rate of 190-215 words per minute", "adventure stories and comic books," and "instructions for assembling model cars and airplanes."  Dkt. No. 9 at 12.  In

---

[2]The Court notes that the government does not mention and, thus, does not dispute that counter supply worker and floor waxer also require certain reading abilities that Chun does not have. *See generally* Dkt. No. 11.  Therefore, independent of color vision, this would be another undisputed reason for why these jobs are not consistent with the RFC.

response, the government does not dispute that the job of cleaner has a "Reading Level of 2". Dkt. No. 11 at 2. In a rational world, that is where this issue should have ended: the job of cleaner has a reading requirement, something which the ALJ concluded Chun's work could not require, and, therefore, the job of cleaner should not have been included as one Chun could perform, at least not without clarification from the ALJ.

Instead, the government doubles down, arguing that, although cleaner has a reading requirement, in counsel's estimation, it is not a "duty" of the job. Dkt. No. 11 at 2-3. More specifically, pointing to the DOT's mention of "adventure stories and comic books", the government posits that "no cleaner needs to read comic books *as a job duty*." *Id*. at 2 (emphasis in original). First, to the extent that the government finds unpersuasive the DOT's description of the reading needs of a cleaner, it is not this Court's place to ignore the SSA's own guidelines, which provide that the SSA relies "primarily on the DOT…for information about the requirements of work in the national economy." SSR 00-4P, 2000 WL 1898704, at * 2 (Dec. 4, 2000). The Court declines to substitute government counsel's understanding for that of the DOT, particularly in the absence of any authority suggesting the Court should do otherwise. Second, in cherry-picking "adventure stories and comic books" from the DOT's description, the government ignores that,

8

according to the DOT, the job of cleaner also requires reading at a rate of 190-215 words per minute. There is nothing in the record suggesting Chun has such an ability, and it is contradicted by the ALJ's own finding that Chun can only do work that does not require *any* reading.[3]

In this light, the DOT undisputedly provides a reading requirement for the job of cleaner. Equally undisputed is that, despite the ALJ instructing the VE to list jobs that do not require reading, the VE listed three, including the job of cleaner, that do. *That is clearly a conflict between the VE and the DOT.* In such a situation, Chun asserts, and the government does not dispute, that the ALJ was required to resolve or otherwise clarify the conflict. Dkt. No. 9 at 15-16 (citing SSR 00-4P, which provides that an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts" with the DOT); 2000 WL 1898704, at *1. No such explanation, however, was offered.[4] To make matters worse, the Appeals Council also failed to identify and explain the clear conflict. In fact, there is nothing in the

---

[3]In that regard, the government also appears to effectively challenge the ALJ's finding that Chun could do work that does not require reading, arguing that Chun "overstates his reading limitations…." Dkt. No. 11 at 3. It is unclear, however, how Chun's reading limitations could be "overstate[d]" when the ALJ found that he could only do work that does not require reading.
[4]The hearing transcript reflects that, although the ALJ asked the VE whether his testimony was "consistent with the DOT", the VE did not fully answer the question, only responding that the "DOT does not address breaks and that's based on my experience…." AR at 65.

record, except for government counsel's unsupported understanding of the requirements of a cleaner, that identifies and attempts to explain the conflict.

Therefore, because this conflict, along with the ones involving the other jobs relied upon by the ALJ, must be identified and explained by someone with *vocational* experience, *see* 2000 WL 1898704, at *1, this proceeding is REMANDED to the Commissioner for further review.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision denying Chun's applications for disability insurance and supplemental security benefits is REMANDED for further administrative proceedings consistent with this Order. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: August 25, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Randall Chun v. Frank Bisignano, Commissioner of Social Security*; Civil No. 25-00105 DKW-KJM; **ORDER REMANDING DECISION OF COMMISSIONER OF SOCIAL SECURITY**